UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MOHAMED SALAMI,

                                        Plaintiff,

         -v-

B S D FOOD LLC, d/b/a/ BAGEL D'LOX and
NELSON BUCHINGER,

                                        Defendants.

---

Case No. 21-CV-02704 (KMK)

ORDER

KENNETH M. KARAS, District Judge:

On March 30, 2021, Mohamed Salami ("Plaintiff") filed a complaint against B S D Food
LLC, d/b/a Bagel D'Lox ("B S D") and Nelson Buchinger ("Buchinger"; collectively,
"Defendants"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et
seq.*, and New York Labor Law, Article 6 § 190, *et seq.*, as well as the regulations promulgated
thereunder.  (*See* Compl. ¶ 1 (Dkt. No. 1).)  The Parties now seek approval of a proposed
settlement agreement.  (*See* Joint Letter (Dkt. No. 15) Ex. 2 ("Proposed Agreement") (Dkt. No.
15-2).)  For the reasons to follow, the settlement agreement is approved.

## I.  Background

### A.  Factual Background

Plaintiff is a former cashier at B S D in Monsey, New York.  (*See* Compl., Factual
Background, ¶ 6.)  Plaintiff was hired in October 2018.  (*Id.*)  In that capacity, Plaintiff alleges
that Defendants "did not provide Plaintiff with wage theft notices or a set rate of pay for a
substantial amount of his time working for Defendants."  (*Id.* ¶ 13.)  Specifically, Plaintiff avers
that he worked approximately 54 hours per week and Defendants consistently refused to

compensate Plaintiff at a rate of time-and-a-half for overtime hours, including after receiving a raise from $12.00 to $13.00 per hour in November 2019.  (*Id.* ¶¶ 19, 21, 23.)  Plaintiff alleges that throughout this time, Defendants "willfully failed to keep appropriate payroll" and "time records" as well as failed to "post notices of the minimum wage and overtime wages requirements in as required by" state and federal law.  (*See id.* ¶¶ 25–26, 27.)  Plaintiff also alleges that "[t]hroughout his employment for Defendant[s], [he] requested to be paid pursuant to the law."  (*Id.* ¶ 28.)  Plaintiff states that notwithstanding his requests, "Defendants took no action to pay [him] properly."  (*Id.* ¶ 29.)  Plaintiff avers that he spoke directly with "Buchinger about the issue" and "requested to be paid properly, as he was being denied overtime."  (*Id.* ¶¶ 30, 31.)  In response to his raising this issue, Buchinger fired Plaintiff.  (*Id.* ¶ 31.)  Accordingly, Plaintiff sought to recover unpaid overtime wages as well as liquidated damages and attorneys' fees.  (*Id.*, Nature of the Action, ¶ 1.)  Plaintiff also sought damages in the form of pre- and post-judgment interest.  (*Id.*, Prayer for Relief.)

B.  Procedural History

Plaintiff filed his complaint on March 30, 2021.  (Dkt. No. 1.)  On May 10, 2021, the Parties entered into a stipulation extending time to respond to the complaint and waiving all objections and defenses related to personal jurisdiction and improper service.  (Dkt. No. 7.)  On June 4, 2021, Defendants filed an Answer in which they denied Plaintiff's claims broadly.  (*See generally* Answer (Dkt. No. 8).)

On June 18, 2021, the Court issued an order declaring the dispute eligible for mediation. (Dkt. No. 12.)  On a status conference the following week, the Court referred the parties to mediation.  (*See* Dkt. (minute entry of June 24, 2021).)

On October 8, 2021, the Mediator issued a final report.  (Dkt. No. 13.)  The Mediator

Report notes that "agreement was reached on all issues."  (Dkt. (minute entry of Oct. 8, 2021).)

On October 28, 2021, via a Joint Letter, the Parties submitted to the Court a proposed settlement,

which they requested that the Court approve.  (Dkt. No. 15.)

## II.  Discussion

### A.  Standard of Review

Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court

order is made "[s]ubject to . . . any applicable federal statute."  "Except as provided in Rule

41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that

the court considers proper."  *See* Fed. R. Civ. P. 41(a)(2).  The Second Circuit has confirmed that

the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals

settling FLSA claims with prejudice require the approval of the district court or the [Department

of Labor] to take effect."  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir.

2015) (quotation marks omitted), *cert. denied*, 136 S. Ct. 824 (2016).[1]  Consequently, "the

[P]arties must satisfy the Court that their agreement is 'fair and reasonable.'"  *Penafiel v. Rincon*

*Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also*

*Velasquez v. SAFI-G, Inc.*, No. 15-CV-3068, 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015)

(same).

---

[1] Although not relevant here, the Second Circuit has explained the authority of the Department of Labor to approve settlements, noting "the Secretary of Labor has the authority to 'supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under'" certain portions of the FLSA, in which case "'[t]he agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have . . . to such . . . unpaid overtime compensation and' liquidated damages due under the FLSA."  *Cheeks*, 796 F.3d at 201 n.1 (second alteration in original) (quoting 29 U.S.C. § 216(c)).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same).  Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

4

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (quotation marks omitted).[2]  To this end, courts require information surrounding:

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (quotation marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 176).

B. Analysis

Under the Proposed Agreement, Defendants agree to pay Plaintiff a total sum of $18,000 (the "Settlement Amount").  (Joint Letter 3.)

1. Whether Settlement Amount is Fair and Reasonable

Plaintiff alleges that he is owed approximately $12,806.70 in liquidated damages, inclusive of unpaid minimum wages and overtime compensation, for his wage-related claims. (Joint Letter Ex. 1 ("Wage Damage Calculation") at 3.)   "Defendants do not fully dispute the

---

[2] This approach is consistent with the requirement that "FLSA settlements . . . not be confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair."  *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (alterations and quotation marks omitted).

5

weekly hours claimed by Plaintiff, but claim that Plaintiff took breaks and did not work the full 54 hours per week that he asserts."  (Joint Letter 3.)

"The Parties must submit to the Court a more detailed explanation of Plaintiffs' total estimated damages and the calculation of the Settlement Amount before the Court will approve it."  *Perez v. Ultra Shine Car Wash, Inc.*, No. 20-CV-782, 2021 WL 1964724, at *4 (S.D.N.Y. May 17, 2021) (collecting cases).  While Plaintiffs do not walk through each specific step of the damage calculations, they are nonetheless discernable; in other words, the information and calculations are a far cry from analogous causes of action wherein district courts have rejected FLSA settlement proposals due to the parties' failure to "provide an explanation of the methodology used to calculate th[e] [settlement] amount, or the underlying data."  *Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19-CV-8216, 2020 WL 5894603, at *3 (S.D.N.Y. Oct. 5, 2020).

In short, the "Real Pay" figure represents the amount Plaintiff was allegedly due, calculated in the following piecemeal way: twelve dollars per hour for Plaintiff's first forty hours worked that week, and eighteen dollars per hour, or time-and-a-half, for every additional hour Plaintiff worked.  (Wage Damage Calculation 2, 3.)  However, Plaintiff was only paid the sum total of the "Paycheck and Cash," leaving the "Difference."  (*Id.*)  The sum of "differences" is $6,403.35.  (*Id.* at 3.)

Under FLSA settlements, "double damages [are] the norm and single damages the exception."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) (citing *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)), *holding modified on other grounds by Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003). Avoiding an imposition of liquidated double damages requires a showing that "the employed in

subjective 'good faith' and had objectively 'reasonable grounds' for believing that the acts or omissions giving rise to the failure did not violate the FLSA." *Id.*  Because there is no evidence before the Court of either necessary criterion, the Court agrees that double damages are appropriate regarding the causes of action related to unpaid minimum wages and overtime compensation.  Therefore, the Court finds that the $12,806.70 in liquidated damages as part of the Settlement Amount is reasonable.

Plaintiff also alleges Defendants failed to post wage notices.  (*See* Compl., Nature of the Action, ¶ 3.)  A violation of this provision of NYLL can result in damages of up to $5,000.  *See* N.Y. Lab. Law § 198.  Despite the fact that Defendants deny this allegation, in light of the statutory maximum for such a violation, the Parties state in their Joint Letter that "Plaintiff[']s damages come to $17,806.70, not including attorneys' fees and damages for retaliation," implicitly accounting for this amount.  (Joint Letter 4.)  Given that this is the statutory maximum of the penalty, the Court finds this, too, to be a reasonable amount added to the total Settlement Amount.

The Settlement Amount does not, however, have any damages regarding Plaintiff's retaliation allegation, named as the fifth and final cause of action in Plaintiff's complaint, (*see* Compl., Factual Background, ¶¶ 59–63).  Defendants deny this allegation, (*see generally* Answer; *see also* Joint Letter 4), and "[t]he [P]arties agree that Plaintiff's retaliation claim is not as strong as h[is] wage claims," (Joint Letter 4).

A prima facie case of retaliation is established by "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).  A court in this district has held that an

employee who lodges oral and written internal complaints with an employer may fail to meet the first prong, and thus fail to establish a prima facie case of retaliation under the FLSA if said complaints lack sufficient specificity. *See Dunn v. Sederakis*, 143 F. Supp. 3d 102, 109–14 (S.D.N.Y. 2015) (evaluating employees' oral and written complaints and ultimately holding that, because the plaintiff failed to "plead a protected oral complaint . . ., there is no occasion to consider the second and third elements of a prima facie FLSA retaliation claim as to these complaints" (italics omitted)).

Therefore, to realize this claim, it is possible—if not quite likely—that "Plaintiff would have to expend time and money on discovery, motion practice, and trial." *Rubio v. BSDB Mgmt., Inc.*, —— F. Supp. 3d ——, 2021 WL 3631122, at *2 (S.D.N.Y. July 8, 2021). And, of course, there exists "a range [of] uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 433 (S.D.N.Y. 2014) (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)). For example, Plaintiff may be unable to prove his case, notwithstanding the financial and temporal resources expended, or even that after "expending resources on further discovery and motion practice, a trial would leave Defendant without sufficient assets to satisfy a judgment." *Lora v. To-Rise, LLC*, 452 F. Supp. 3d 5, 9 (E.D.N.Y. 2019).[3] In sum, with regard to this claim, "the Parties have represented that a bona fide dispute exists . . . , which also militates in favor of approval, as settlement avoids the expense, burden, and risk associated with going to trial." *Briggs v. DPV Transportation, Inc.*, No. 21-CV-6738, 2021 WL 6111917, at *3 n.2 (S.D.N.Y. Dec. 27, 2021) (collecting cases)

---

[3] This risk is particularly influential when Defendants' payment plan has been dictated by its financial footing amidst the Covid-19 pandemic. (*See* Joint Letter 3.)

(internal quotation marks omitted).  With this in mind, the Court cannot consider the Parties'
decision to effectively discard this count as substantively unreasonable, particularly where the
remaining damages calculation is anchored above 100% of the damages due pursuant to wage-
related violations notwithstanding the dispute over Plaintiff's notice cause of action.  *See Rojas
v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018)
(finding a proposed settlement amount of approximately 31% of the plaintiffs' calculation of the
total potential recovery to be fair and reasonable); *Beckert v. Ronirubinov*, No. 15-CV-1951,
2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (finding a proposed settlement amount of
approximately 25% of the estimated maximum possible recovery to be fair and reasonable).

2.  Good Faith

The Court is satisfied that the Proposed Agreement "appears to have been the 'product
of arm's-length bargaining between experienced counsel' with no evidence of 'fraud or
collusion' after participation in the Court's mediation program."  *Yunjian Lin v. Grand Sichuan
74 St Inc.*, No. 15-CV-2950, 2018 WL 3222519, at *5 (S.D.N.Y. July 2, 2018) (quoting
*Wolinsky*, 900 F. Supp. 2d at 335); *see also Yunda v. SAFI-G, Inc.*, No. 15-CV-8861, 2017 WL
1608898, at *3 (S.D.N.Y. Apr. 28, 2017) ("The settlement was reached shortly after a mediation
before the Court.  This fact further negates the possibility of fraud or collusion."); *Diaz v. Scores
Holding Co., Inc.*, No. 07-CV-8718, 2011 WL 6399468, at *2 (S.D.N.Y. Jul.11, 2011) ("In
FLSA settlements, . . . arm's-length negotiations involving counsel and a mediator raise a
presumption that the settlement achieved is procedurally fair, reasonable, adequate, and not a
product of collusion.")

### 3. Similarly Situated Plaintiffs

"The Court is not aware of other employees who are similarly situated to Plaintiff[], and Plaintiff[] will be the only . . . employee[] affected by the settlement and dismissal of the lawsuit. These facts weigh in factor of approval of the [Proposed Settlement]." *Briggs*, 2021 WL 6111917, at \*4; *see Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310, 324 (S.D.N.Y. 2021) (noting that no other employee came forward and that the plaintiff "will . . . be the only employee affected by the settlement and dismissal," and that these facts supported approval of the proposed settlement); *Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6818, 2016 WL 7048714, at \*3 (S.D.N.Y. Dec. 2, 2016) (same).

### 4. Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Ramos v. DNC Food Serv. Corp.*, No. 19-CV-2067, 2021 WL 5280954, at \*2 (S.D.N.Y. Nov. 12, 2021) ("[A] number of judges in this District refuse to approve any FLSA settlement unless the release provisions are limited to the claims at issue in this action." (quoting *Cionca v. Interactive Realty, LLC*, No. 15-CV-5123, 2016 WL 3440554, at \*3 (S.D.N.Y. June 10, 2016))); *Rubio*, 2021 WL 3631122, at \*4 (denying request for approval of proposed settlement agreement after finding that "[t]he release provisions at issue are plainly overbroad as they require [the] [p]laintiff to waive a broad set of claims that goes far beyond wage-and-hour issues or the claims at issue in this lawsuit").

Here, the Proposed Settlement reads, in relevant part:

Plaintiff hereby irrevocably and unconditionally releases from liability and forever discharges and covenants not to sue Defendants, and for each of them, their heirs, successors, assigns, affiliates, parent organizations, subsidiaries, directors, owners, shareholders, members, agents, attorneys, legal representatives and managers, for any and all charges, complaints, claims, causes of action, suits, debts, liens, contracts, rights, demands, controversies, losses, costs and or expenses, including legal fees and any other liabilities stemming from and/or relating to the conduct and claims alleged in this case known or unknown, suspected or unsuspected, whether fixed or contingent, at issue in this action, **limited to the conduct that has arisen out of the factual predicate of the settled conduct** (hereinafter referred to as "claim" or "claims") as of the Effective Date of this Agreement, and for damages, (A) that were asserted or could have been asserted in the Litigation, (B) that arise under federal, state or City of New York law, statute, ordinance, rule or regulation or its equivalent and relates to the compensation of, or wages, salary or benefits paid or payable to Plaintiff, whether known or unknown, including claims under the Fair Labor Standards Act, New York Wage and Hour Law, New York Labor Law, the regulations of the New York State Commissioner of Labor, New York Executive Law Section 296(16), New York City Administrative Code Section 8-107(11), any and all common law claims alleging negligence, deceit, fraud, retaliation, seeking unpaid compensation, wages, salary employee benefits, wages, tips, uniform maintenance payments, notice/statement payments, spread of hours payments, commissions, accrued vacation time, accrued sick time or any other claims for any form of compensation whatsoever, in law or in equity, arising out of his employment relationship with Defendants, and (C) that any Defendant violated any contract, agreement, understanding or arrangement that relates in any way to the compensation, wages, salary or benefits paid or payable to Plaintiff, whether known or unknown, as long as such claim for damages denoted in sections (A-C) is **limited to the claims at issue in this action**. Nothing in this Agreement is intended to enhance any rights to any benefits to which Plaintiff may have been entitled during his employment with Defendants.

(Proposed Agreement, ¶ 6.)  The Court finds that the waiver as worded is acceptable.

As explained above, under the Second Circuit's precedent, "any release provision must be limited to the claims at issue in this action." *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015).  In other words, releases "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct." *Nights of Cabiria*, 96 F. Supp. 3d at 181 (citation and quotation marks omitted).  Because both the liability and damages portions of the release are "expressly limited to the conduct in this case,"

*Shah v. 786 MS Corp.*, No. 20-CV-4406, 2021 WL 2789265, at *4 (S.D.N.Y. Apr. 23, 2021), the

Court finds that release provision, "while broad," is acceptable, *Pucciarelli v. Lakeview Cars,*

*Inc.*, 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017) (approving FLSA

settlement that, "while broad, . . . relates specifically to wage and hour issues without

encompassing, for example, prospective discrimination claims").

### 5.  Attorney's Fees

Finally, the Court finds that the attorneys' fees and costs requested by Plaintiff's counsel

are reasonable.  Under both the FLSA and NYLL, a successful plaintiff—including one who

settles—is entitled to attorneys' fees.  *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015

WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198,

663(1)).  In the Second Circuit, courts may calculate attorneys' fees using one of two methods:

the "lodestar" method or the "percentage of the fund" method.  *See McDaniel v. Cnty. of*

*Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

"Under the percentage-of-the-fund method, the attorneys are awarded a reasonable

percentage of the common fund."  *Kefi*, 2015 WL 4006896, at *3.  On the other hand, "[u]nder

the lodestar method, 'the district court scrutinizes the fee petition to ascertain the number of

hours reasonably billed to the class and then multiplies that figure by an appropriate hourly

rate.'"  *Ortiz v. Chop't Creative Salad Co. LLC*, 89 F. Supp. 3d 573, 590 (S.D.N.Y. 2015)

(footnote omitted) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)).

In this scenario, "[a]fter the computation is done, 'the district court may, in its discretion,

increase the lodestar by applying a multiplier based on "other less objective factors," such as the

risk of the litigation and the performance of the attorneys.'"  *Id.* at 590–91 (quoting *Goldberger*,

209 F.3d at 47).  "Although [the Second Circuit] ha[s] acknowledged that the trend in this Circuit

is toward the percentage method, it remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel*, 595 F.3d at 417 (some quotation marks omitted).

Irrespective of which approach is taken, courts draw on the following considerations—commonly known as the "*Goldberger* factors"—when assessing the reasonableness of attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (alteration and quotation marks omitted).

When requesting attorneys' fees in an FLSA case, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336. Although courts may elect to award fees by either considering the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended—or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he trend in [the Second] Circuit is toward the percentage method . . . ." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). Even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181. The Court must also determine the reasonable hourly rate by considering the "prevailing market rate

for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

Here, under the Proposed Settlement Agreement, Plaintiff's counsel seeks an award of $6,235.10.  (*See* Joint Letter 4.)  Plaintiff's counsel is due to receive one-third of the total settlement, plus costs, per the retainer agreement between Plaintiff and counsel.  (*See* Joint Letter Ex. 3, at 1–2.)  Plaintiff's counsel also submitted records detailing the billable hours and expenses counsel undertook as part of this settlement, totaling north of $15,500.  (*See generally* Joint Letter Ex. 4 ("Legal Bills").)  Notwithstanding several instances of somewhat barren or repeated descriptions, the Court finds that these records meet the above-mentioned standard set forth in this Circuit: "billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done."  *Wolinsky*, 900 F. Supp. at 336 (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).

Based on the billing records, counsel expended a significant amount of time and resources—namely two attorneys with over 30 hours each.  (*See* Legal Bills 3.)  To that point, "[t]he attorney's fees requested . . . are significantly less tha[n] the amount billed by Plaintiff's Counsel for this case," especially given that the Court finds counsel's rates fair when "considering the 'prevailing market rate for lawyers in the district in which the ruling court sits.'" *Shah*, 2021 WL 2789277, at *2 (quoting *Anthony*, 844 F. Supp. 2d at 507).

Additionally, the fees and expenses requested of 33% of the total settlement is in line with common practice in the Second Circuit.  *See Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *6 (S.D.N.Y. Sept. 17, 2020) ("[C]ourts in the Second Circuit routinely award attorney's fees in FLSA settlements of one-third of the total recovery") (collecting cases); *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1

(S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *Thornhill v. CVS Pharmacy, Inc.*, No. 13-CV-5507, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) ("In this Circuit, courts typically approve attorney's fees that range between 30 and 33%.") (collecting cases); *Silverstein v. AllianceBernstein, L.P.*, No. 09-CV-5904, 2013 WL 7122612, at *9 (S.D.N.Y. Dec. 20, 2013) ("Counsel's request for 33 1/3% of the settlement fund is reasonable and consistent with the norms . . . in this circuit." (quotation marks omitted)) (collecting cases).

Finally, that Plaintiff bargained for this figure "also provides support" for the request. *Silverstein*, 2013 WL 7122612, at *9; *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 478 (S.D.N.Y. 2013) (finding that plaintiffs' agreement with counsel for 33% of the settlement militates in favor of granting such an award).

Given that courts in this Circuit routinely award one third of the Settlement Amount for attorney's fees and associated costs, that Plaintiff's counsel provided evidence to support such an award, and that Plaintiff bargained for such an award, the Court finds the request reasonable.

### III.  Conclusion

For the reasons stated, the Parties' settlement is approved.  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated:    March 7, 2022
          White Plains, New York

_____
        KENNETH M. KARAS
        United States District Judge